**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Christopher E. Hansen, Representative, | : | Case No. 3:08 CV 01835 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM DECISION** |
| | | **AND ORDER** |
| Liberty Life Assurance Company of Boston | : | |
| Defendant. | : | |

The parties have consented to have the undersigned Magistrate Judge enter judgment in this case filed pursuant to the Employee Retirement and Income Security Act of 1974 (ERISA), as amended, at 29 U. S. C. § 1001 *et. seq.*  Pending are:  (1) Defendant's Motion for Summary Judgment (Docket No. 28) and Plaintiff's Response in Opposition (Docket No. 29) and (2) Plaintiff's Motion to Reverse Administrator's decision (Docket No. 27) and Defendant's Opposition (Docket No. 30).  For the reasons that follow, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion to Reverse is denied as moot.

## I.  JURISDICTION

Federal courts have exclusive jurisdiction over cases brought by a beneficiary of an employee

1

to recover benefits due to him or her under the terms of an insurance contract.  29 U. S. C. § 1132(1)(a)(B) (Thomson Reuters 2010).

## II.  THE PARTIES

Plaintiff, a resident of Lucas County, Ohio, was married to Jennifer Hansen.  Plaintiff was the duly appointed executor of Jennifer Hansen's estate (Docket No. 1, ¶ 1).

Defendant, a corporation organized under the laws of the State of Massachusetts, offers a comprehensive life insurance and other annuity products to individuals and business partners (Docket No. 1, ¶ 2; http:///222.lib-life.com).

## III.  THE FACTS

Jennifer Hansen was employed by National City Corporation (NCC), a bank, as a branch manager (Docket No. 1, ¶ 5, Docket No. 28, Exhibit 4).  Mrs. Hansen was a covered employee under a group life insurance plan established and maintained by NCC.  Defendant was the insurer of participants in NCC's group life insurance plan.  Effective January 1, 2004, the plan provided accidental death and dismemberment insurance benefits as well as basic life insurance (Docket No. 1, ¶s 6, 7 & 9; Docket No. 27, Exhibit 1, pp. 2 of 79 - 38 of 79).

On December 3, 2005, Mrs. Hansen died as a result of injuries sustained in a single vehicle automobile collision and ensuing combustion (Docket No. 1, ¶ 8).  Dr. Robert B. Fortney, Ph. D., Chief Toxicologist for the Office of the Lucas County Coroner (OLCC) and Diplomate of the American Board of Forensic Toxicologists, completed the "final" forensic report on Mrs. Hansen's blood samples.  Dr. Fortney did not quantify the presence of ethanol in Mrs. Hansen's blood but extracted urine and a tube of blood from Mrs. Hansen's aorta.  The presence of 3.2 milligrams of cyanide per liter of blood was detected (Docket No. 27, Exhibit 1, p. 60 of 79).

The certificate of death issued on December 7, 2005 indicated that Mrs. Hansen's immediate cause of death was thermal burns (Docket No. 27, Exhibit 1, p. 79 of 79).

In April 2006, Plaintiff made a claim under the group life insurance policy for payment of benefits and interest to Jennifer Hansen's estate (Docket No. 1, ¶ 10). Defendant executed their duties under the terms of the policy, investigating all documents of the accident and denying Plaintiff's claim for payment of accidental death benefits on April 18, 2006[1] (Docket 1, ¶s 11 & 12; Docket No. 3, ¶ 24; Docket No. 28, Exhibit 5). Plaintiff requested administrative review of the denial of benefits on June 18, 2006 (Docket No. 27, Exhibit 1, p. 68 of 79). The disability claims manager acknowledged receipt of the request for review on June 26, 2006 (Docket No. 27, Exhibit 1, p. 66 of 79). Plaintiff filed a "formal appeal" on August 29, 2006[2] (Docket No. 28, Exhibit 6). The disability claims manager acknowledged the official request (Docket No. 27, Exhibit 1, p. 65 of 79).

On September 18, 2006, Mrs. Hansen's blood and urine specimens were received by the National Medical Services (NMS), a laboratory that conducts toxicological and forensic testing (Docket No. 27, Exhibit 1, p. 38 of 79; http://www.nmslab.com.) Dr. Edward J. Barbieri, Ph. D., a forensic toxicologist, tested for ethyl alcohol, cyanide and carboxyhemoglobin (carbon monoxide and hemoglobin). On October 4, 2006, he rendered the results, in writing, explaining that the blood sample

---

[1]

Under the terms of the policy, accidental death benefits are payable under the policy only when a covered employee suffers from a loss solely as a result of accidental injury. No benefits are payable for any loss that is contributed to or caused by intentional self infliction of injuries or committing or attempting to commit a felony or misdemeanor. The disability claims manager determined that Mrs. Hansen's driving under the influence of alcohol at a level of 0.25% was, at a minimum, a misdemeanor under Ohio law. The claims manager also found that the act of drinking at a level of 0.25% was a self inflicted injury. Finally, the claims manager denied payment on the basis that Mrs. Hansen should have reasonably expected serious injury resulting from operating a vehicle at that level of intoxication.

[2]

Plaintiff asserted three reasons that the disability claims manager's decision denying benefits was flawed. First, the toxicology report was scientifically unreliable. Second, there was an inherent conflict of interest where the plan administrator made a determination about whether benefits under the plan would be paid. Third, the accident was not self inflicted.

3

received on August 15, 2006, showed that Jennifer Hansen had an alcohol level of .216%, there was no cyanide detected and the carboxyhemoglobin (carbon monoxide and hemoglobin) in the blood was less than 2% saturation. The analysis for cyanide administered on the blood sample received on September 18, 2006, was incomplete due to an interfering substance in the saturation of carboxyhemoglobin. The carboxyhemoglobin level increased to 9.7% saturation (Docket No. 27, Exhibit 1, p. 38 of 78).

On October 10, 2006, Dr. Robert P. Millstein, M. D., reviewed Mrs. Hansen's history, the traffic reports, the autopsy results, the certificate of death, Dr. Fortney's report and policy of insurance. Dr. Millstein acknowledged that Dr. Fortney had drawn the blood sample from the heart and the level of cyanide was unusually elevated (Docket No. 27, Exhibit 1, pp. 52 of 79 - 58 of 79).

On November 6, 2007, Dr. Bruce Hasspieler, a Doctorate in Toxicology and member of the Society of Toxicology, conducted an independent review of information submitted by counsel including the OLCC and NMS reports[3] (Docket No. 27, Exhibit 1, p. 41 of 79). On November 15, 2007, Dr. Steven C. Packham, a Diplomate of the American Board of Toxicology also conducted an independent review of information submitted by counsel which included a summary from OLCC, an autopsy report, a forensic toxicology report, a report from NMS, the certificate of death, the traffic report and a time line prepared by Plaintiff's counsel[4] (Docket No. 27, Exhibit 1, p. 46 of 79).

---

[3]

Dr. Hasspieler took issue with NMS's failures to (1) reconfirm the original result; (2) employ quality control measures; (3) employ measures designed to preserve the speimen integrity or maintain a chain of custody; and (4) identify and/or document the presence of cyanide and other unidentified substances in the samples (Docket No. 28, Exhibit 12, pp. 3 of 5 - 5 of 5).

[4]

In short, Dr. Packham suggested that the cyanide in the blood was formed by artificial means. Therefore, the measures of postmortem cyanide concentrations were most likely the result of postmortem cyanogenic bacterial activity or laboratory artifacts, or both (Docket No. 29, Exhibit 13, pp. ).

4

Plaintiff filed a complaint with the Ohio Department of Insurance (ODI).  Defendant responded to ODI in January 2008.  Plaintiff's counsel forwarded a new letter and attachments in February 2008 to ODI.  The complaint and letter were considered untimely filed (Docket No. 28, p. 6 of 22).

Plaintiff filed the complaint in this Court seeking to reverse the ERISA administrator's decision to refuse payment under the terms of the policy.  Defendant filed a Motion for Summary Judgment seeking enforcement of the disability claims manager's decision.  Plaintiff filed a Motion to Reverse the decision of the disability claims manager.

## V.  POSITIONS OF THE PARTIES

Plaintiff seeks judicial review of the administrator's decision denying benefits.  He presents three issues.  First, based on the policy of insurance, the plan administrator erred in finding that Mrs. Hansen's death was not accidental.  Second, the plan administrator was arbitrary and capricious in concluding that Mrs. Hansen intended to injure or kill herself.  Third, the plan administrator erred as there is no reliable evidence that Mrs. Hansen's death was caused by committing a misdemeanor.

In the Motion for Summary Judgment, Defendant concedes that the arbitrary and capricious standard applies.  Defendant contends, however, the plan exclusions that deny accidental death benefits apply.  Specifically, no benefits are payable for any loss that is contributed to or caused by committing or attempting to commit a felony or misdemeanor.

The Magistrate first addresses Defendant's motion.

### 1.    STANDARD OF REVIEW

A denial of benefits challenged under 29 U. S. C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary, discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  *Kalish v. Liberty Mutual/Liberty*

5

*Life Assurance Company of Boston*, 419 F. 3d 501, 506 (6ᵗʰ Cir. 2005).  "When such authority is granted, the highly deferential arbitrary and capricious standard of review is appropriate."  *Id.* (*citing Borda v. Hardy, Lewis, Pollard, & Page, P.C.,* 138 F.3d 1062, 1066 (6ᵗʰ Cir. 1998) (citation and quotation marks omitted)).  The arbitrary and capricious standard is the least demanding form of judicial review of administrative action.  *Loan v. Prudential Insurance Company of America,* 588 F. Supp.2d 770, 774 (E. D. Ky., 2008) (*citing Williams v. International Paper Company,* 227 F.3d 706, 712 (6ᵗʰ Cir. 2000).  The Court must decide whether the plan administrator's decision was "rational in light of the plan's provisions."  *Id.* (*quoting Daniel v. Eaton Corporation,* 839 F.2d 263, 267 (6ᵗʰ Cir. 1988) *cert. denied,* 109 S. Ct. 76 (1988)).   " '[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.' "  *Id.* (*quoting Davis v. Kentucky Finance Companies Retirement Plan,* 887 F.2d 689, 693 (6ᵗʰ Cir. 1989) *cert. denied* 110 S. Ct. 1924 (1990))).  In reviewing the administrator's decision, the Court may only consider evidence available to the plan administrator at the time the final decision was made.  *Id.* (*citing Smith v. Ameritech,* 129 F.3d 857, 863 (6ᵗʰ Cir. 1997) (*quoting Yeager v. Reliance Standard Life Insurance Company,* 88 F.3d 376, 381 (6ᵗʰ Cir.1996)).  The administrator's interpretation of the plan provision will be upheld if it is reasonable.  Id.

### A.    APPLICABLE LAW AND POLICY EXCLUSION.

Under Ohio law, whoever operates any vehicle, within Ohio, and at the time of operation, the person has a concentration of eight-hundredths of one per cent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood, is guilty of a misdemeanor of the first degree.  OHIO REV. CODE §§ 4511.19(a)(1)(a) & (b), 4511.19(G)(1)(a) (Thomson Reuters 2010).

6

Section 5 of Mrs. Hansen's policy provided that no benefits were payable for any loss that was contributed to or caused by committing or attempting to commit a misdemeanor (Docket No. 1, Exhibit 1, p. 27 of 79).

### B. THE ADMINISTRATOR'S DECISION THAT MRS. HANSEN'S DEATH WAS NOT ACCIDENTAL.

Plaintiff contends that case law and common sense support the position that Mrs. Hansen's death was accidental.  The administrative record is devoid of any evidence which either quantifies or estimates that the likelihood of injury or death is higher because the person operating the vehicle has consumed alcohol.

In two cases, the Sixth Circuit differentiates the progressive effects of alcohol and the negligent or intentional conduct that flows therefrom.  First, the Sixth Circuit Court of Appeals found that a drunk driver, operating a car with a blood alcohol level that was **three times** the legal limit, was grossly negligent.  *Lennon v. Metropolitan Life Insurance Company*, 504 F. 3d 617, 621 (6th Cir. 2007).  The driver "broke the law" by driving with a blood alcohol level that exceeded the legal limit, knowing that his drunk and severely impaired driving created a significant risk of bodily harm or death to himself and others.  *Id.*  Failure to take precautions demonstrated indifference to that risk.  *Id.*  Under these circumstances, the insurer did not act arbitrarily and capriciously in finding that the participant's death while driving with a blood alcohol level three times the legal limit was not an accident within the meaning of the policy.  *Id.*

Recently in *Kovach v. Zurich American Insurance Company*, 587 F.3d 323, 334-335 (6th Cir. 2009), the Court analyzed, at length, the supposition that the injuries sustained by a drunken motorcycle driver, whose blood alcohol level was only **slightly** over the legal limit, ran a stop sign and collided with another was not covered as an accidental occurrence.  *Id.*  The crux of the decision was that the insurer

7

should have added an exclusion in the plan for driving while intoxicated.  *Id.*  The failure to specifically exclude driving while intoxicated created, in effect, another exclusion of which plan participants and beneficiaries were unaware.  *Id*.  Statistics did not seem to bear out the inevitability of death flowing from drunken driving.  *Id*.  The Court observed that a driver increased his or her risk of a collision while fatigued, speeding, or taking certain over-the-counter medications.  *Id*.  If "reasonably foreseeable" injuries were excluded from coverage, then the definition of accident would frustrate the legitimate expectations of plan participants as well as undermine ERISA's requirement that benefit plans be written in a manner calculated to be understood by the average plan participant.  *Id*. at 332.  For these reasons, the Court concluded that administrator's decision denying benefits on the basis that Mr. Kovach's "wreck" was not accidental was arbitrary and capricious.

Under the deferential standard of review, there is no absence of reasoning in the record to support the administrator's finding that Mrs. Hansen's blood alcohol level was similar to that of the driver in *Lennon*.  Based on the information the plan administrator had at the time of the collision, it is unrefuted that Mrs. Hansen was intoxicated at the time of the collision.  The plain administrator's decision cannot be said to be arbitrary and capricious because she offered a reasonable explanation, based upon the evidence, to find that Mrs. Hansen's death resulting, in part, from the affects of gross drunkenness.  The Magistrate will not disturb the plan administrator's finding.

### C.    DEATH RESULTING FROM THE COMMISSION OF A MISDEMEANOR.

Plaintiff was denied coverage pursuant to the exclusion in the policy that prohibits payment for any loss that was contributed to or caused by committing or attempting to commit a felony or misdemeanor (Docket No. 1, Exhibit 1, p. 27 of 79).  Plaintiff does not argue that there is an ambiguity in the definition of the felony or misdemeanor.  The Magistrate does not find that an ambiguity exists in

the contractual language of this portion of the plan.  In fact, the language in the plan is sufficiently plain to permit a reasonable person to understand its meaning.  Simply, a reasonable person is likely to understand that (1) a person who operates a vehicle within Ohio with a concentration of eight-hundredths of one per cent alcohol or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood, is guilty of driving while under the influence of alcohol, a misdemeanor of the first degree and (2) no benefits are payable for any loss that is contributed to or caused by the commission or an attempt to commit a misdemeanor.  OHIO REV. CODE § 4511.19(a)(1)(a) & (b); OHIO REV. CODE § 4511.19(G)(1)(a) (Thomson Reuters 2010); Docket No. 27, Exhibit 1, p. 27 of 79).

Under the terms of the plan, the administrator or fiduciary was granted discretionary authority to determine eligibility for benefits.  The administrative record as it existed at the time the claims fiduciary issued her decision denying payment did not contain the potential conflicts in toxicological screen evidence raised by Drs. Hasspieler and Packham.  The administrator's decision cannot be said to have been arbitrary and capricious because it is based on a reasoned explanation.  It is inappropriate for the Court to consider this evidence outside the administrative record.  The unrefuted evidence shows that at the time of her death, Mrs. Hansen had a blood alcohol level that exceeded a concentration of eight-hundredths of one percent.  Mrs. Hansen had reached the level of wrongdoing required to constitute a misdemeanor under Ohio law.  Given the plain and usual meaning of the exclusions in the policy and the toxicology report in her possession at the time the decision was made, the disability claims manager's decision to deny benefits on the basis that the loss was contributed to by the commission of a misdemeanor, was not arbitrary or capricious.

The Magistrate finds that no ambiguity exists in the contractual language of this portion of Mrs.

Hansen's plan.  The language in the plan is sufficiently plain to permit an average person to understand its meaning.  A reasonable person is likely to understand that if he or she is drinking while driving with a concentration of eight-hundredths of one per cent or more of alcohol to blood and such drinking or driving contributes to or causes a loss of any kind, no benefits are paid for the loss.  Based on the evidence in her custody at the time the decision was made, the disability claims administrator's decision to deny benefits on the basis that the loss was contributed to by the commission of a misdemeanor, was not arbitrary or capricious.

      2.      **CONCLUSION**

Plaintiff failed to present sufficient evidence to create a genuine issue of material fact or otherwise defeat the Motion for Summary Judgment.  Defendant is therefore granted judgment as a matter of law. In view of this finding, the Magistrate finds it unnecessary to address Plaintiff's remaining arguments that the plan administrator erred in concluding that Mrs. Hansen intended to injure or kill herself.

## VI.  CONCLUSION

For these reasons, the Magistrate grants the Motion for Summary Judgment (Docket No. 28) and denies the Motion to Reverse as moot (Docket No. 27).

**IT IS SO ORDERED.**

                          /s/Vernelis K. Armstrong
                          United States Magistrate Judge

Date:   March 12, 2010

10